IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SHARON M. JAMES,<br><br>    Plaintiff,<br><br>v.<br><br>A.C. MOORE ARTS AND CRAFTS,<br>INC., et al.,<br><br>    Defendants. | Civ. No. 18-063-CFC |

Sharon M. James, Wilmington, Delaware, Pro se Plaintiff.

Jennifer Gimler Brady, Esquire, and Jennifer Penberthy Buckley, Esquire, Potter Anderson & Corroon, LLP, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

January 23, 2020
Wilmington, Delaware

**CONNOLLY, U.S. District Judge:**

Plaintiff Sharon M. James, who appears *pro se*, has sued her former employer and two individual defendants for employment discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq.* (ADEA). (D.I. 2) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Pending before me are Plaintiff's motions for default judgment (D.I. 39; D.I. 50; D.I. 53), Defendants' motion to dismiss the Amended Complaint (D.I. 41), Plaintiff's motion for recusal (D.I. 56), Plaintiff's motion for leave to file an interlocutory appeal (D.I. 60), and Plaintiff's motion to stay (D.I. 63). The matters have been briefed.

I. **BACKGROUND**

Plaintiff alleges age discrimination claims against her former employer, A.C. Moore Arts & Crafts, Inc., Laura Doron, and Starmane Hayman. Plaintiff filed her original complaint on January 8, 2018. (D.I. 2) In May 2018, the Court permitted her to amend her complaint. (D.I. 13) Plaintiff alleged in her original amended complaint four claims of discrimination, each of which corresponded with a separate charge of discrimination she had filed with the Delaware Department of Labor (DDOL) and Equal Employment Opportunity Commission (EEOC). Defendants moved to dismiss all four claims of the original amended complaint. (D.I. 28) On March 1, 2019, I granted Defendants' motion. (D.I. 36) In the Order granting the motion, I dismissed the first three claims but gave Plaintiff leave to amend the harassment/hostile work environment claim she had raised in her fourth charge of discrimination with the DDOL and EEOC. *Id.* Although the Order dismissed Plaintiff's third claim, I stated in the Memorandum Opinion issued in conjunction with the Order that Plaintiff's third claim would be

1

dismissed without prejudice. (D.I. 35 at 13) Thus, notwithstanding the March 1, 2019 Order, Plaintiff was free to seek to amend both the third and fourth claims she had pled in her original amended complaint.

On March 28, 2019, Plaintiff filed an Amended Complaint, alleging claims under the ADEA and 42 U.S.C. § 1981.[1] (D.I. 37) Although this Amended Complaint is really Plaintiff's second amended complaint, the parties have referred to it as "the Amended Complaint," and I will follow their lead. I will refer to Plaintiff's initial amended complaint as the original amended complaint.

## II. MOTION FOR RECUSAL

I turn first to the issue of recusal. Plaintiff moves for my recusal pursuant to 28 U.S.C. § 455. (D.I. 57) She alleges that my prior representation of Potter Anderson & Corroon LLP, the law firm that represents Defendants in this matter, requires my recusal. (*Id.*) In addition, Plaintiff seeks my recusal on the grounds that I cannot hear this case in a fair and impartial manner as required by the Code of Judicial Conduct. (D.I. 56) Plaintiff's motion and supplement provide a chronology of the case. Therein, she takes exception to rulings I have issued in this action. Plaintiff goes into great detail about why she believes my decisions are not supported by the law or the facts.

---

[1] Section 1981 does not support a cause of action for discrimination on the basis of age. "It is well settled among the federal courts of appeals . . . that § 1981 affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975). Moreover, the exclusive federal remedy for claims of age discrimination in employment is the ADEA. *Hildebrand v. Allegheny Cty.*, 757 F.3d 99, 108 (3d Cir. 2014) ("[W]e join with the majority of Courts of Appeals in concluding that Congress intended the ADEA to be the exclusive remedy for claims of age discrimination in employment.").

2

In addition, she states that I have demonstrated favoritism towards Defendants and their counsel and that I have taken advantage of her *pro se* status.

Under 28 U.S.C. § 455(a), a judge is required to recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test for recusal under § 455(a) is whether a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004). Under § 455(b)(1) a judge is also required to recuse himself "[w]here he has a personal bias or prejudice concerning a party." Under either subsection, the bias necessary to require recusal generally "must stem from a source outside of the official proceedings." *Liteky v. United States*, 510 U.S. 540, 554 (1994); *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir. 2004) (beliefs or opinions which merit recusal must involve an extrajudicial factor).

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Similarly, claims of bias or partiality cannot be based on "expressions of impatience, dissatisfaction, annoyance, [or] even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. *Id.* at 555-56. It is evident in reading Plaintiff's motion that she takes exception to my rulings and her dissatisfaction with those rulings serves as one of the grounds of her recusal request. But a reasonable, well-informed observer would not believe that my rulings were based on impartiality, bias, or actual prejudice. Thus, neither § 455(a) nor § 455(b)(1) requires my recusal.

Plaintiff next argues that my recusal is required under § 455(b)(2), which obligates a judge to recuse himself if "in private practice he served as lawyer in the matter in controversy, or [if] a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it." None of these circumstances is present here. I never represented any party to this litigation and, to my knowledge, none of the lawyers with whom I previously practiced law served as a lawyer in this matter during my association with them. Nor am I or any of my former colleagues from private practice a material witness in this matter. Thus, there is no basis for recusal under § 455(b)(2). The fact that I previously represented the law firm that represents Defendants is not a basis for recusal. *See County of Hudson v. Janiszewski*, 351 F. App'x 662, 668 (3d Cir. 2009) (affirming a trial judge's decision not to recuse even though he had a relationship with the law firm representing plaintiffs).

Accordingly, I will deny Plaintiff's motion for recusal. (D.I. 56)

## III. INTERLOCUTORY APPEAL

Plaintiff seeks leave to file an interlocutory appeal pursuant to Delaware Supreme Court Rule 42. (D.I. 60) Plaintiff wishes to appeal the Order entered on March 1, 2019. (*See* D.I. 35, 36) She also moves for an automatic stay. (D.I. 63) In seeking leave to appeal, Plaintiff relies upon the Rules of the Supreme Court of the State of Delaware. Those rules, however, do not apply to this federal court case.

Interlocutory appeals in federal courts are governed by 28 U.S.C. § 1292. Section 1292(b) permits immediate appeals from orders when three criteria are met:

(1) the order involves a controlling question of law; (2) there is a substantial ground for difference of opinion with respect to the resolution of the issue to be appealed; and (3) an immediate appeal from the district court's decision could materially advance the ultimate termination of the litigation. *See, e.g., Chao v. Roy's Const., Inc.*, 517 F.3d 180, 188 (3d Cir. 2008). Entertaining an interlocutory appeal under § 1292(b) is appropriate only when the party seeking leave to appeal "establishes [that] exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989) (table).

"[T]hese three criteria do not limit the Court's discretion to grant or deny an interlocutory appeal." *In re SemCrude L.P.*, 407 B.R. 553, 557 (D. Del. 2009). Leave to file an interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974).

I will deny Plaintiff's motion. Despite her displeasure with my rulings, Plaintiff has failed to establish that the March 1, 2019 Memorandum Opinion and Order involve a controlling issue of law. A controlling issue of law is one that either: 1) if decided erroneously, would lead to reversal on appeal; or 2) is "serious to the conduct of the litigation either practically or legally." *Katz*, 496 F.2d at 755. In addition, Plaintiff has failed to establish there is a substantial difference of opinion among courts with respect to the rulings made in the March 1, 2019 Memorandum Opinion and Order. Finally, granting Plaintiff permission to file an interlocutory appeal would not advance the ultimate termination of the litigation nor would it save time or resources.

Accordingly, I will exercise my discretion and deny Plaintiff's motion for leave to file an interlocutory appeal and also deny as moot Plaintiff's motion for an automatic stay. (D.I. 60; D.I. 63)

## IV. MOTION FOR DEFAULT JUDGMENT

Plaintiff has filed a motion for summary default judgment (D.I. 39), a letter/motion requesting entry of default judgment (D.I. 50), and a request for entry of default (D.I. 53). Plaintiff seeks entry of default as to A.C. Moore on the grounds that the action was filed on June 13, 2018, A.C. Moore did not answer, and the time to do so has lapsed. (D.I. 53) Plaintiff seeks summary default judgment on the grounds that Defendants failed to plead or defend in this action and default was entered on April 17, 2019. (D.I. 39) She also seeks entry of default judgment on the grounds that Defendants have not submitted a timely answer to the complaint and have neither admitted nor denied the allegations as required by the Federal Rules of Civil Procedure. (D.I. 50)

A party seeking to obtain a default judgment must first request the Clerk of Court to "enter . . . the default" of the party that has not answered the pleading or "otherwise defend[ed]," within the time required by the rules or as extended by court order. Fed. R. Civ. P. 55(a). Timely serving and filing a motion to dismiss under Fed. R. Civ .P. 12(b), precludes entry of default. *See Francis v. Joint Force Headquarters Nat'l Guard*, 2006 WL 2711459 (D.N.J. Sept. 19, 2006), *aff'd in part*, 247 F. App'x 387 (3d Cir. 2007). Because entry of a default judgment is an "extreme sanction," *Scarborough v. Eubanks*, 747 F.2d 871, 875 (3d Cir. 1984), the entry of such a judgment is generally disfavored. *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983). Even if

6

default is properly entered, the entry of judgment by default pursuant to Rule 55(b)(2) is within the discretion of the trial court. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984).

I will deny Plaintiff's request for entry of default and motions for default judgment. (D.I. 39; D.I. 50; D.I. 53) First, there has been no entry of default. Second, Defendants appeared, filed a motion to dismiss the original Complaint, and then filed a motion to dismiss the Amended Complaint. In short, Defendants have appeared and defended themselves in this case and, in any event, default judgments are disfavored.

## V. MOTION TO DISMISS

### A. Legal Standards

#### 1. Rule 12(b)(6)

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds *pro se*, her pleading is liberally construed and her Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94. A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of

7

entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 347. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### 2. The ADEA

The ADEA makes it unlawful for an employer to discharge an employee due to an individual's age. *See* 29 U.S.C. § 623. Under the ADEA, a plaintiff must establish that she: (1) was over forty years old; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by a person sufficiently younger to permit an inference of age discrimination. *See Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).

## B. Alleged Facts

The Amended Complaint contains the following allegations: Plaintiff was hired by A.C. Moore to be a permanent part-time activity specialist on July 9, 2009, and she held the position for four years. (D.I. 37 at 3) Her work schedule consisted of days, nights, weekends, and holidays, and she worked 20 to 30 hours per week or more. (*Id.*) Plaintiff worked at the A.C. Moore store located at Kirkwood Plaza in Wilmington, Delaware ("Wilmington store"). (*Id.*)

In January 2013, Doron, A.C. Moore's executive vice-president of human resources, and Gary Stewart, A.C. Moore's general manager, implemented a static schedule that targeted older workers for voluntary lay-offs and reduced work hours and had an adverse employment impact on employees over the age of 40. (*Id.*) In February 2013, A.C. Moore advertised new job openings and hired a group of young people to fill the job vacancies created by the voluntary resignation of the older workers selected for static scheduling. (*Id.* at 4) On February 22, 2013, Plaintiff filed her First Charge with the DDOL. (D.I. 37 at 4; D.I. 37-1 at Ex. 2)

In May 2013, the activity specialist job was eliminated in the Wilmington store, but it was not eliminated from other A.C. Moore stores. (D.I. 37 at 5) Plaintiff was discharged from the classroom and demoted to a permanent cashier position, a position for which she did not apply. (*Id.*) Plaintiff did not receive an official letter stating that the activity specialist job had been eliminated, and she was not offered another job comparable to the one she had held. (*Id.*)

As a permanent cashier, Plaintiff's work hours were reduced. (*Id.*) She worked three days a week, five hours each day and netted $125.00 a week, and her schedule

9

was permanently changed to Mondays, Fridays, and Saturdays. (*Id.* at 5-6) Plaintiff could not fulfill her role as activity specialist for summer fun Wednesdays after her workdays were changed, and the job was assigned to Joanne Miller, an older woman. (*Id.* at 6) Plaintiff filed her Second Charge with the DDOL on June 14, 2013. (D.I. 37 at 6; D.I. 37-1 at Ex. 2)

According to the Amended Complaint, Doron's letter to the DDOL, dated August 19, 2013, made in response to the First Charge and Second Charge, contained false allegations about Plaintiff and falsified Plaintiff's attendance sheets to make it appear that Plaintiff was absent and tardy. (D.I. 37 at 8-10; D.I. 37-1 at Ex. 9) Plaintiff also alleges that Doron prohibited Plaintiff in 2013 from testifying in two other discrimination cases (D.I. 37 at 9; D.I. 37-1 at Exs. 11, 20), failed to withhold federal taxes on Plaintiff's earnings in 2014 and 2015, and assigned Plaintiff duties that Plaintiff was not certified or trained to perform. (D.I. 37 at 7; D.I. 37-1 at Ex. 16)

Plaintiff also claims that she was separated from all staff meetings and huddles for three years, removed from classroom activities in 2014, and prohibited from participating in the Alex's Lemonade Stand fundraiser. (D.I. 37 at 22) She also alleges that AC Moore stopped giving her performance appraisals as of July 2015. (*Id.*)

In January 2016, Plaintiff received a third job description from Doron that instructed Plaintiff to clean the restrooms and breakroom, sweep the floors, and carry garbage to the trash bin. (D.I. 37 at 7; D.I. 37-1 at Ex. 17) Plaintiff alleges that Doron added janitorial duties to every job description in the store "so it would not appear that [Doron] was singling out the Plaintiff" and that the assignment of janitorial duties to

Plaintiff was an adverse employment action in retaliation for Plaintiff's filing of discrimination charges. (*Id.*)

In 2015 and 2016, Plaintiff filed internal complaints about Hayman and the District Manager. (D.I. 37 at 13; D.I. 37-1 at Ex. 27) In January 2016, Plaintiff filed her Third Charge against A.C. Moore with the DDOL, alleging workplace harassment and/or retaliation as a result of the charges she had previously filed with the DDOL. (D.I. 37 at 7)

On July 15, 2017, Plaintiff arrived at work and went to the breakroom to retrieve her name badge. (*Id.*) Her locker was "zip tied and notices were posted on the lockers that stated, 'if anyone need[s] a locker, go to Starmane [Hayman].'" (*Id.*) Plaintiff did not need a locker because she had been assigned Locker 49 for eight years. (*Id.*) The notice stated: "do not cut the zip ties off the lockers." (*Id.*) Plaintiff cut the zip tie from Locker No. 49 to retrieve her name badge so she could go to work. (*Id.* at 12) When Plaintiff arrived at work on July 17, 2017, her things had been removed from Locker 49, and she could not open her locker because it was padlocked. (*Id.*) Plaintiff complained, Hayman was contacted, and Hayman stated that if anyone needed a locker to come to her. (*Id.*) According to the Amended Complaint, there were other lockers without zip ties or locks on them. (*Id.*) Plaintiff left work very upset because the locker had been assigned to her for eight years. (*Id.*) On August 3, 2017, Plaintiff filed her Fourth Charge with the DDOL regarding the July 2017 incident. (D.I. 37 at 13; D.I. 37-1 at Ex. 2)

In March 2018, towards the end of Plaintiff's employment, as a "cover up," Doron instructed all cashiers to retrain as front-end specialists during the company's

restructuring initiative which Plaintiff did not complete due to harsh conditions in the store (*i.e.*, the store was very cold and customers were complaining about it). (D.I. 37 at 11; D.I. 37-1 at Ex. 24) Plaintiff quit her job due to the harsh conditions. (D.I. 37 at 11)

### C. Analysis

Defendants argue that dismissal is warranted because: (1) the Court previously dismissed the claims against individual Defendants Doron and Hayman; (2) the Court previously dismissed as untimely Plaintiff's claims that are based on Plaintiff's first two charges of discrimination filed with the DDOL (No. 17C-2013-00290 and No. 17C-2013-00548); (3) the Third Charge of discrimination was untimely filed; (4) Plaintiff failed to exhaust her administrative remedies; (5) Plaintiff has not alleged a cognizable hostile work environment claim; and (6) Plaintiff has not alleged a cognizable retaliation claim.

#### 1. Claims Against the Individual Defendants

I held in the Memorandum Opinion dated March 1, 2019 that I would dismiss all of Plaintiff's claims against Doron and Hayman because, as a matter of law, the ADEA does not provide for individual liability. (D.I. 35 at 8) Unfortunately, the March 1, 2019 Order did not state that all claims against Doron and Hayman were dismissed and, perhaps because of that error, Plaintiff has realleged in the Amended Complaint claims against Doron and Hayman, *see* D.I. 37 ¶ 2. In any event, the law with respect to individual liability under the ADEA has not changed since the March 1, 2019 Memorandum Opinion, and therefore I will dismiss Plaintiff's claims against Doron and Hayman for the reasons stated in the March 1, 2019 Memorandum Opinion. (D.I. 35 at 8)

### 2. Claims Set Forth in First Two DDOL Charges

To the extent the Amended Complaint realleges the claims set forth in Plaintiff's first two charges filed with the DDOL (No. 17C-2013-00290 and No. 17C-2013-00548), they were dismissed as a result of the March 1, 2019 Order and Memorandum Opinion because, as stated in the Memorandum Opinion, they were filed long past the 90-day deadline. (D.I. 35 at 10)

To the extent Plaintiff intended to reallege or renew discrete claims in the Third Charge and Fourth Charge that she had raised in the First and Second Charges, I will grant Defendants' motion. Thus, I will dismiss as discrete claims of discrimination: the alleged reduction in work hours in 2013, demotion/job reassignment in 2013 and 2014, low performance evaluation in 2013, and the alleged false response to the DDOL in August 2013. (These acts, however, may still be alleged in connection with Plaintiff's hostile work environment and retaliation claims, which, for reasons explained below, I will not dismiss.)

### 3. Timeliness of Third Charge and Exhaustion of Its Claims

A plaintiff bringing an employment discrimination claim under the ADEA must first exhaust her administrative remedies by complying with the procedural requirements set forth in 29 U.S.C. § 626. *See Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 883 (3d Cir. 2019). To do so, a plaintiff must file a charge with the EEOC within 180 days of the allegedly unlawful employment practice or within 300 days if a state or local agency enforces a law that prohibits employment discrimination on the same basis alleged by the claimant. 29 U.S.C. § 626(d)(1). If the EEOC or state agency dismisses the charge, then the plaintiff must bring an action in federal district court

within 90 days of receiving a right-to-sue letter. *See* 29 U.S.C. § 626(e); *see also Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). "Both requirements—exhaustion and filing—are non-jurisdictional prerequisites, akin to statutes of limitations." *See Communications Workers of Am. v. N.J. Dep't of Personnel*, 282 F.3d 213, 216 (3d Cir. 2002).

Plaintiff's Third Charge of Discrimination was presented to the DDOL on January 20, 2016 and filed with the EEOC on February 8, 2016. Defendants maintain that the Third Charge was presented to the DDOL on January 20, 2015—not 2016—and I similarly stated in the March 1, 2019 Memorandum Opinion that the presentation of the Third Charge to DDOL occurred in 2015. (D.I. 35 at 2) Defendants also allege that the alleged acts of discrimination set forth in the Third Charge occurred before January 20, 2015. *Id.* But having studied more carefully the Third Charge (D.I. 2 at 7), I have concluded that the two references to "2015" in the Third Charge form are typographical errors. Thus, I find that the charge was in fact presented to the DDOL in 2016 and that the "Date(s) [the] Discrimination Took Place" in the Third Charge run through January 20, 2016. (D.I. 2 at 7) For that reason, I reject Defendants' argument that "Plaintiff filed [the Third] EEOC charge approximately one year after she claims the latest acts of discrimination took place" and that "all claims based on the Third Charge must be dismissed in their entirety with prejudice." (D.I. 42 at 12)

The question remains whether Plaintiff claims that the discrete acts of alleged discrimination set forth in the Third Charge and the Amended Complaint occurred within 300 days of February 8, 2016. Answering that question is made difficult by the fact the allegations in the Third Charge lack specificity and the fact that the Amended Complaint

14

does not identify the dates of certain alleged acts of discrimination. Liberally construing the allegations and reviewing the exhibits attached to the Amended Complaint, it seems that the following acts of discrimination alleged in the Amended Complaint fall within the description of charges set forth in the Third Charge and occurred within 300 days of February 8, 2016: (1) Plaintiff's exclusion from Alex's Lemonade Stand fundraiser; (2) her exclusion from staff/meetings/huddles; (3) AC Moore's failure to provide Plaintiff with performance appraisals; and (4) the third new job description and janitorial duties assigned to Plaintiff in January 2016. Accordingly, Plaintiff's claims of discrimination based on these four categories were timely filed with the DDOL and EEOC, and Plaintiff has exhausted her administrative remedies for these claims. I therefore will deny Defendants' motion to dismiss these claims.

### 4. Exhaustion of Tax Claim

Defendants argue that Plaintiff's allegation that Defendants failed to withhold federal taxes from her salary should be dismissed for failure to exhaust administrative remedies. Defendants are correct that Plaintiff failed to make this allegation in either her Third or Fourth Charge filed with the DDOL. Accordingly, I will grant Defendants' motion insofar as it seeks dismissal of this claim.

### 5. Hostile Work Environment Claims

In the March 1, 2019 Order, I dismissed the hostile work environment claim as alleged by Plaintiff with respect to the Fourth Charge. As I noted in the March 1, 2019 Memorandum Opinion, "[t]he [F]ourth [C]harge of discrimination refers to one discrete act—the reassignment of Plaintiff's employee locker-and not repeated conduct. In addition, while not clear, it appears from Plaintiff's additional allegations that all

15

employees were notified of the new locker assignment issue and that action was taken not based upon age." (D.I. 35 at 16) Plaintiff was given leave to amend, but the Amended Complaint's allegations with respect to the Fourth Charge are not materially different from the allegations in the original complaint and do not cure the pleading defects identified in the March 1, 2019 Memorandum Opinion. Accordingly, I will dismiss the hostile work environment claim to the extent it is based on the Fourth Charge.

With respect to the Third Charge, in light of Plaintiff's *pro se* status and the obligation of the Court at the pleading stage to construe liberally Plaintiff's allegations, I find that Plaintiff has adequately alleged a hostile work environment as set forth in the Third Charge. The Third Charge refers to continuing harassment that includes changing Plaintiff's job description and requiring her to perform janitorial duties in an attempt to force Plaintiff to resign. (D.I. 37-1 at Ex. 2)

### 6. Retaliation

Defendants move to dismiss the retaliation claims raised in the Third and Fourth Charge. The prima facie case for retaliation under the ADEA requires a plaintiff to show (1) she engaged in a protected activity; (2) she was subject to an adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005).

Once again, liberally construing the Amended Complaint, Plaintiff appears to have made out a prima facie case of retaliation under the ADEA, as Plaintiff's EEOC complaints constitute protected activity, she was subjected to adverse employment actions, and there may be a causal connection between her complaints and the adverse

16

employment actions. Plaintiff filed two EEOC charges of discrimination in 2013 and alleges in her Third Charge that after she presented her claims, her job duties were continually changed in an effort to force her to resign. Similarly, the Fourth Charge states that after Plaintiff filed her prior charge (*i.e.*, the Third Charge), she was demoted and her employee locker was taken from her and given to another employee.

Accordingly, the Court will deny Defendants' motion to dismiss the retaliation claims.

## VI. CONCLUSION

For the reasons discussed above, I will: (1) deny Plaintiff's motions for entry of default and for default judgment (D.I. 39; D.I. 50; D.I. 53); (2) grant in part and deny in part Defendants' motion to dismiss the Amended Complaint (D.I. 41); (3) dismiss Defendants Laura Doron and Starmane Hayman as parties; (4) deny Plaintiff's motion for recusal (D.I. 56); (5) deny Plaintiff's motion for leave to file an interlocutory appeal (D.I. 60); and (6) deny Plaintiff's motion for an automatic stay (D.I. 63).

The Court will issue an Order consistent with this Memorandum Opinion.