IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SHARON M. JAMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 18-063-CFC |
| | ) | |
| A.C. MOORE ARTS AND CRAFTS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

Sharon M. James, Wilmington, Delaware, Pro se Plaintiff.

Jennifer Gimler Brady, Esquire, and Jennifer Penberthy Buckley, Esquire, Potter Anderson & Corroon, LLP, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

March 31, 2021
Wilmington, Delaware

**CONNOLLY, U.S. District Judge:**

Plaintiff Sharon M. James, who appears *pro se*, commenced this action alleging employment discrimination under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621, *et seq*. (D.I. 2) The Amended Complaint is the operative pleading. (D.I. 37) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Before me are the parties' cross-motions for summary judgment. (D.I. 100, 105)

I. **BACKGROUND**

James alleges age discrimination against her former employer, Defendant A.C. Moore Arts and Crafts, Inc. The case proceeds on the following claims, all other claims having been dismissed: (1) a hostile work environment claim raised in the Third Charge of Discrimination ("Third Charge"), presented to the Delaware Department of Labor ("DDOL") on January 20, 2016, and filed with the EEOC on February 8, 2016, that alleges continuing harassment including changing James's job description and requiring her to perform janitorial duties in an attempt to force her to resign; (2) retaliation claims raised in the Third Charge of discrimination and Fourth Charge of Discrimination ("Fourth Charge"), presented to the DDOL on August 3, 2017, that allege James's job duties were continually changed in an effort to force her to resign after she filed two charges of discrimination in 2013 and when James was demoted to cashier and janitor and her employee locker taken from her and given to another employee after she filed the Third Charge; and (3) an age discrimination claim raised in the Third Charge for (a) James's exclusion from a fundraiser for Alex's Lemonade Stand hosted by A.C. Moore, (b) James's exclusion from staff meetings and "huddles" of employees, (c) A.C. Moore's failure to provide James with performance appraisals, and (d) James's

1

receipt of a third job description and janitorial duty assignments in January 2016.[1] (*See* D.I. 68, 69)

## II. STATEMENT OF FACTS

Although the parties filed competing statements of facts (D.I. 100 at 6-11; D.I. 110; D.I. 113; D.I. 116), the record establishes that there is no genuine dispute about the facts material to the resolution of the pending motions.

James was over 50 when she was hired by A.C. Moore during the summer of 2009 as a part-time Activities Specialist for its Wilmington, Delaware store. (D.I. 106-1 at ¶ 1; D.I. 106-2 at 13, 23) James testified that her hours initially fluctuated from between 20 to 30 hours per week under the company's flexible schedule. (D.I. 106-2 at 23) James testified that her duties included product demonstrations, making samples, setting up displays, chaperoning field trips, helping customers gather materials, and helping "cashiers get their lines down." (D.I. 106-2 at 24) James was given training to work the cash register when she was hired and she received a certification of cashier register operation from A.C. Moore in October 2009. (*Id.* at 29-32)

The Activities Specialist job description in place at A.C. Moore at the time James was hired ("first job description") included cashier duties, coordinating class and event schedules, and performing other duties as assigned. (D.I. 100, Ex. L) The Activities Specialist job description was revised in June 2011 ("second job description"). The

---

[1] The Court dismissed discrete claims of discrimination including alleged reduction in work hours in 2013, demotion/job reassignment in 2013 and 2014, low performance evaluation in 2013, and an alleged false response to the DDOL in August 2013. (*See* D.I. 68 at 14)

2

second job description also included cashiering duties. (D.I. 106-2 at 102-108, 207) James testified that she never put in an application for the second job description, never received training for the job duties in the second job description, never asked to perform those duties, and was never disciplined for not performing those duties. (D.I. 106-2 at 51, 52, 91, 93, 94, 102, 103, 107-111)

A.C. Moore again revised the Activities Specialist job description in November 10, 2015 ("third job description"). The third job description included cashiering duties and added, among other things, light janitorial duties. (D.I. 106-1 at 22) According to the undisputed testimony of Laura Doran, Executive Vice-President of Human Resources for A.C. Moore, janitorial duties were added to the job descriptions for all positions at A.C. Moore, including for its merchandising supervisor and associate positions. (*Id.* at 4 ¶ 34, and at 17-20) James testified that she refused to perform janitorial work and that she was not disciplined for refusing to perform that work. (D.I. 106-3 at 148, 149)

In February 2013, A.C. Moore implemented a pilot program at its Wilmington store to test a new "Static Schedule" that assigned all employees set, regular hours. (D.I. 106-1 at 1 ¶¶ 1, 3, 5, 10) The new schedule resulted in a reduction of scheduled weekly work hours for most positions, including the Activities Specialist position, the hours for which were reduced to 15 hours per week. (*Id.* at 2 ¶¶ 6, 7, 14, 15) Once the Static Schedule was implemented in early 2013, James's work hours were reduced and she worked from 12:00 p.m. to 5:00 p.m. Mondays, Fridays, and Saturdays. (D.I. 106-1 at 2 at ¶¶ 14, 15; D.I. 16-2 at 125)

3

On February 22, 2013, James filed a Charge of Discrimination ("First Charge") and alleged discrimination based upon her age. (D.I. 106-2 at 210) On June 14, 2013, James filed a Second Charge of Discrimination ("Second Charge") and alleged retaliation for filing the First Charge. (*Id.* at 212) On August 13, 2013, Doron submitted a written response to the DDOL and provided A.C. Moore's position on James's first two charges of discrimination. (D.I. 110 Ex. 110) James testified that the response was inaccurate because it attributed to James job duties for which she had never received training and because it stated that James had two "no shows." (D.I. 106-2 at 51, 90) James admitted, however, that she was never asked to perform those duties and was never disciplined for her inability to perform any of the duties or for her lack of attendance. (*Id.* at 87-90)

James testified that she was selected for the Static Schedule program, demoted, and had her job title changed to cashier shortly after she filed the charges of discrimination. (D.I. 106-2 at 27, 35, 53, 67, 98) James testified that she never quit the Activities Specialist job. *Id.* at 27, 54-55, 98, 99)

James testified that once she was selected for the Static Schedule program Associate Store Manager Starmane Hayman began treating her differently from other employees. (D.I. 106-2 at 46-48, 56-57, 77, 147, 190, 192, 193) James alleges the treatment was based on her age and because she had filed a complaint against Hayman with the Human Resource Department and Loss Prevention. (*Id.* at 58)

James testified that she was kept out of staff meetings and huddles after her performance appraisal in 2015 because her regularly scheduled shift was from 12:00 p.m. to 5:00 p.m. and the staff meetings typically began before noon. (*Id.* at 156)

4

A.C. Moore hosted an Alex's Lemonade Stand fundraiser in its store each year. (*Id.* at 149)  James testified that she participated in the fundraiser once before the Static Schedule was implemented and "was loving it."  (*Id.* at 147)  James testified that on one occasion when she was participating in the fundraiser—"close[ ] to 2013"—she was taken off the stand and placed back on the register.  (*Id.* at 152, 154)  James testified that she saw both younger and older employees man the lemonade stand, including one employee who was over 70 years old.  (D.I. 37 at 3; D.I. 106-2 at 150, 153, 155)  According to Doron's unrebutted testimony, participation in the Alex's Lemonade Stand fundraiser was not a responsibility of any particular job title, and managers had the discretion to determine who was assigned to participate in the fundraiser.  (D.I. 106-1 at 4 ¶¶ 36, 37)

James received annual performance appraisals for 2009, 2010, 2012, 2013, and 2015.[2]  (D.I. 106-1 at 3 ¶ 22; D.I. 106-2 at 135, 156, 214-215).  James normally received a "meets expectations" rating.  (D.I. (D.I. 106-1 at 3 ¶ 22; 106-2 at 214-215)  James testified that after the Static Schedule Program was implemented her performance evaluation for 2013 dropped, but her score increased once she learned the functions of a cashier.[3]  (D.I. 106-2 at 52, 135; D.I. 110 Ex. G)  According to Doron, James was not disciplined and her compensation was not reduced as a result of the 2013 performance evaluation score.  (D.I. 106-1 at 3 ¶ 24)

---

[2] Performance evaluations were not done for any employees in 2011 due in part to A.C. Moore's leadership changes.  (*Id.* at 3 ¶ 23)  The record does not indicate if James received a performance evaluation for 2014.
[3] The 2013 performance appraisal form does not indicate when it was received by James.

On January 5, 2016, as part of a company-wide initiative, A.C. Moore began issuing new job descriptions for all field positions. (D.I. 106-1 at 3 ¶¶ 25, 26) The third job description was included as part of the 2016 initiative. (*Id.* at ¶ 33) The changes made to the job description were not specific to James or the Wilmington store where she was employed. (*Id.* at 4 ¶ 27)

On January 20, 2016, James filed her Third Charge and alleged a hostile work environment and retaliation for filing prior charges of discrimination. (D.I. 68 at 17-18; D.I. 106-2 at 220)

On Saturday, July 15, 2017, a sign posted next to the employee lockers in the Wilmington store informed employees that they could submit requests for locker assignments to Hayman. (*Id.* at 61) James testified that she did not submit a locker request because she had been assigned a locker in 2009 when she became an Activities Specialist. (*Id.* at 61, 143) Zip ties were placed on several lockers, including the one used by James. (*Id.* at 61, 141) When James reported to work, she cut the zip tie. (*Id.* at 61, 62, 143) When James next reported to work, a padlock was on the locker. (*Id.* at 62) Hayman was contacted and reiterated that employees who needed a locker were to come to her. (*Id.*) James testified that the locker assignment was retaliation due James's previous complaints against Hayman and, in part, because James was about 25 years older that Hayman. (*Id.* at 76)

On August 3, 2017, James filed her Fourth Charge and alleged retaliation for filing a prior charge of employment discrimination. (D.I. 100 Ex. A)

James testified that towards the end of her employment, A.C. Moore had a new initiative for each employee to train as a front-end specialist. (D.I. 106-2 at 132)

6

James testified that she attempted to train as a front-end specialist, but the building was very cold and, because she could not take the cold, she could not complete her training and resigned. (D.I. 106-2 at 131, 132). Doran states that James voluntarily resigned her employment with A.C. Moore in March 2018. (D.I. 106-1 at 5 ¶ 42) For the entire time James was employed at A.C. Moore, her job title never changed and her rate of compensation was never reduced. (D.I. 106-1 at 5 ¶¶ 40, 41)

### III. LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). "In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant." *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict

for the non-moving party." *Id.* (internal quotation marks omitted).  A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).  The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ."  *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).  If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

The standard does not change when the parties cross-move for summary judgment.  *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016).  When both parties move for summary judgment, "'[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'"  *Id.* (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).

8

## IV.   DISCUSSION

### A.   The Hostile Work Environment Claim

The hostile work environment claim proceeds on the allegations set forth in the Third Charge of discrimination that refer to continuing harassment that included numerous changes to James's job description and adverse work assignments as a cashier and janitor, all in an attempt to force James to resign.   (D.I. 37-1 at Ex. 2) James moves for summary judgment on the grounds that A.C. Moore subjected her to a hostile work environment based upon her age.   A.C. Moore moves for summary judgment on the grounds that the United States Court of Appeals for the Third Circuit has not formally recognized a hostile work environment cause of action under the ADEA and, in the alternative, the undisputed facts demonstrate the changes to James's job were not motivated by discriminatory animus.

Several Circuits have found that ADEA hostile work environment claims are viable.   See Jaroslawsky v. City and Cty. of San Francisco, 671 F. App'x 998, 999 (9th Cir. 2016); Dediol v. Best Chevrolet, Inc., 655 F.3d 435, 441 (5th Cir. 2011); Collazo v. Nicholson, 535 F.3d 41 (1st Cir. 2008); Brennan v. Metropolitan Opera Ass'n, Inc., 192 F.3d 310, 318 (2d Cir. 1999); Crawford v. Medina Gen. Hosp., 96 F.3d 830, 834 (6th Cir. 1996).   The Third Circuit, however, has not formally recognized a cause of action for hostile work environment under the ADEA.   See Howell v. Millersville Univ. of Penn., 749 F. App'x 130 (3d Cir. 2018); Lyles v. Phila Gas Works, 151 F. App'x 169, 171 n.3 (3d Cir. 2005) (noting, "as the parties do not dispute that such a cause of action exists, we assume, without deciding, that it does for the purposes of this opinion").   As

our Circuit has done in the past, the Court will assume, without deciding, the viability of James's hostile work environment cause of action under the ADEA.

To prevail on summary judgment, James needs to raise a triable issue that A.C. Moore was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Howell*, 749 F. App'x at 135 (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (internal quotation marks omitted). To evaluate whether a working environment is sufficiently hostile or abusive, the Court must examine all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance. *Harris v. Forklift Sys., Inc.* 510 U.S. 17, 23 (1993). In addition, the environment must be both subjectively and objectively hostile or abusive. *Id.*

The undisputed record evidence shows that the duties of the Activities Specialist position changed through the years but always included cashiering duties. James testified that despite those changes, she was never disciplined when she did not perform the duties of the position or when she refused to perform additional duties. The undisputed record evidence establishes that changes in the duties of the Activities Specialist position were not directed specifically to James but rather affected all A.C. Moore employees who held that position. James takes exception to the fact that other employees performed the functions of an Activities Specialist. She refers to an instance when a younger employee took over the lemonade stand, but also refers to an

10

older employee who manned the lemonade stand. In James's eyes, being assigned cashier duties after the Static Schedule was implemented may have seemed like a demotion. But there was no reduction in her hourly wage or change in her job title; and while her work hours were reduced, the work hours of all employees were reduced at the same time. James was not singled out. James's beliefs or conjecture, without evidence to support that any adverse treatment she suffered was due to her age does not support summary judgment on her behalf on this issue. Having reviewed the record, the Court finds that the acts James identifies as contributing to a hostile work environment are neutral with respect to her age. There is in short insufficient evidence to establish a hostile work environment based on discriminatory animus. *See Caver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005).

Accordingly, the Court will grant A.C. Moore's motion for summary judgment and deny James's motion for summary on the issue of a hostile work environment.

### B. The Retaliation Claim

James contends that summary judgment is appropriate on the retaliation claim because she suffered adverse employment actions as a result of her previous charges of discrimination and complaints. A.C. Moore seeks summary judgment on the grounds that (1) the actions taken by it were not adverse to James, (2) its challenged decisions were based on a companywide initiative and were not directed towards James, and (3) there is no evidence to support James's personal view that A.C. Moore or its employees sought to punish her for engaging in protected conduct.

In the absence of direct evidence of retaliation, courts apply the three-part *McDonnell Douglas* burden-shifting framework to retaliation claims. *Fasold v. Justice*,

409 F.3d 178, 188 (3d Cir. 2005). Under that framework, if the plaintiff can establish a prima facie case of retaliation, the defendant must provide a legitimate non-retaliatory reason for its conduct, which the plaintiff can then rebut if she shows the proffered reason is a pretext. *See Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192-93 (3d Cir. 2015). To establish a prima facie case for retaliation under the ADEA, the plaintiff must show that (1) she engaged in a protected activity; (2) she was subject to an adverse action; and (3) there was a causal connection between the protected activity and the adverse action. *Fasold*, 409 F.3d at 188 (3d Cir. 2005); *Patterson v. Commissioner of Social Security*, 834 F. App'x 737 (3d Cir. 2021).

The Third Charge contended that retaliation occurred when James's job duties were continually changed and she was demoted after she filed the First and Second Charges in an effort to force her to resign. James meets the first element of a prima facie retaliation case by reason of her protected conduct.

The Court turns to whether James suffered an adverse action. "[A]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001) (internal citation and quotation marks omitted). Actions like lateral transfers or changes of title have not been found to constitute adverse employment actions in the absence of evidence that there has been a material change in an employee's working conditions. *See Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 641 (2d Cir. 2000) (holding that there had not been an adverse employment action against a teacher who was reassigned from teaching a special education junior high school class to a mainstream high school class where there was

12

no evidence that the change could "constitute a setback to the plaintiff's career"); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 457 (7th Cir. 1994) (finding no adverse employment action when an employee was transferred without a change of salary or benefits although his title and supervisor changed because his "perception that a lateral transfer would be personally humiliating [was] insufficient, absent other evidence, to establish a materially adverse employment action"); *Harlston v. McDonnell Douglas Corp.,* 37 F.3d 379, 382 (8th Cir. 1994) (finding that a plaintiff's reassignment without "diminution in her title, salary, or benefits" did not constitute an adverse employment action although she became responsible for "fewer secretarial duties" and new "more stressful" job duties because these changes caused "no materially significant disadvantage" to her).

  James maintains that she was demoted, her job duties changed, and she was given adverse assignments when she was directed to work as a cashier and asked to perform janitorial duties. The unrebutted record evidence, however, establishes that working as a cashier was always a duty assigned to the Activities Specialist and that James completed a certification of cashier register operation during her first year as an Activities Specialist. The unrebutted record evidence also shows that light janitorial duties were added to the job descriptions of all field positions and that James refused to perform janitorial tasks without repercussion. To James, assignment of cashier responsibilities on a permanent part-time basis may not be desirable, but the assignment of those duties did not change her title, salary, or benefits. James's subjective belief that the assignment of these duties was a "demotion" is insufficient to create a genuine issue of material fact on this issue. *See Fiorentini v. William Penn*

13

*Sch. Dist.*, 665 F. App'x 229, 234 (3d Cir. 2016) (citing *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004) ("[A] plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action."). The change in job duties did not rise to the level of an adverse employment action. Therefore, James has failed to make a prima facie case of retaliation based on a change in her job duties.

The Fourth Charge, filed on August 3, 2017, asserted retaliation when James's assigned locker was taken away from her after she made her Third Charge. James testified that she complained about Hayman on December 14, 2016. A.C. Moore argues that the locker assignment issue had nothing to do with retaliation.

For purposes of the first element of a prima facie case, protected activity "includes not only an employee's filing of formal charges of discrimination against an employer but also informal protests of discriminatory employment practices, including making complaints to management." *Daniels v. School Dist. of Philadelphia*, 776 F.3d at 193. Here, the record reflects that James engaged in protected activity when she filed a complaint with the DDOL in January 2016 and the EEOC in February 2016, and when she made an informal complaint in December 2016. Thus, James has satisfied the first prong of a prima facie case of retaliation.

The Court will assume for argument's sake that James suffered an adverse action when she lost her locker and turn next to the issue of a causal connection between that action and James's engagement in protected activity. With regard to the January 2016, February 2016, and December 2016 complaints, and the locker assignment in July 2017, the timeframes, without more do not suffice to permit an

inference of a causal connection. *See, e.g., Dolan v. Penn Millers Ins. Co.*, 625 F. App'x 91, 94 (3d Cir. 2015) (proximity of three months is not "unusually suggestive," and is insufficient to establish a causal connection). "Although timing and ongoing antagonism have often been the basis for the causal link, [Third Circuit] case law clearly has allowed a plaintiff to substantiate a causal connection for purposes of the prima facie case through other types of circumstantial evidence that support the inference." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). Here, the unrebutted record evidence establishes that all employees were directed to submit a locker request to Hayman. James did not follow the directive based upon her assumption that it was not required because she had been assigned a locker in 2009. Nor did James request a locker after the locker she used was zip tied. Instead, she cut the zip tie and went to work. Notably, the locker James used was not the only locker that was zip tied. No reasonable jury could find that the locker assignment occurred as a result of retaliation in light of the shortest time-frame of seven months and the longest time-frame of one year and six months and the fact that the locker reassignment was not directed solely at James, but at all employees using the work lockers.

James also contends that retaliation occurred when she received a lower performance evaluation after filing a charge of discrimination. An individual is not protected from all retaliation, only from retaliation that produces an injury or harm. *See Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Hence, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68

15

(internal citations and quotation marks omitted).   "[I]t is important to separate significant from trivial harms."  *Id*.

The record evidence shows that James filed her First Charge on February 22, 2013, her Second Charge on June 14, 2013, and her Third Charge was presented to the DDOL on January 20, 2016, and filed with the EEOC on February 8, 2016.   James received a lower performance appraisal for 2013.   The record is silent on when James received the 2013 evaluation.   Jones testified, however, that the next year her performance appraisal increased and she "passed."   The receipt of one negative evaluation, by itself, is not an adverse employment action.   *See Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 220 (3d Cir. 2014).   The record evidence does not support a finding that James's conditions of employment were affected by the one low performance appraisal.

Finally, James contends that A.C. Moore made a false response in its August 2013 letter to the DDOL in retaliation for the charges of discrimination filed by James.  James contends that the response indicated that on two occasions she was a "no call, no show" for work.   However, she was never disciplined for attendance issues.   James testified further that the report attributed to her job duties for which she had never received training; but she admits she was never asked to perform those duties and did not recall being disciplined for not performing them.   Thus, even if A.C. Moore's response was incorrect, there is no record evidence that James suffered any harm because of any alleged inaccuracies.

In light of the foregoing, summary judgment is appropriate on behalf of A.C. Moore and against James on the retaliation claim.

16

### C. The Discrimination Claim

James age discrimination claim is premised on (1) her exclusion from Alex's Lemonade Stand fundraisers, staff meetings, and employee huddles, (2) A.C. Moore's failure to provide James with performance appraisals, and (3) the third job description and janitorial duties assigned to James in January 2016.

To establish a prima facie case of age discrimination under the *McDonnel-Douglas* framework, a plaintiff must show that (1) she is at least forty, (2) she is qualified for the job, (3) she suffered an adverse employment action, and (4) she was replaced by (or passed over in favor of) someone else "who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). At bottom, James "must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

James has failed to establish a prima facie case of age discrimination with respect to the lemonade stand claim. James admitted that one of the two individuals who participated in the lemonade stand fundraiser was over 70 years old. Thus, she did not meet her burden to show that she was replaced by someone "who was sufficiently younger so as to support an inference of a discriminatory motive." In addition, James testified that she was allowed to participate in the event "close[] to 2013." The unrebutted record also establishes that James's job functions did not include participation in the fundraiser and that managers had the discretion to determine who would participate in the fundraiser.

17

James also failed to make a prima facie case with respect to the addition of janitorial duties to her job description since the record does not show she suffered an adverse employment action as a result of the added job duties. Notably, James testified that she refused to perform janitorial duties and that she was never disciplined for refusing to perform those duties. In addition, the unrebutted record shows that janitorial duties were incorporated into all non-exempt job descriptions, and hence, the record does not reflect that James was treated differently based upon her age.

Nor does the record support James's claim that she was excluded from staff meetings and employee huddles based upon her age. Rather, the unrebutted record evidence establishes that James worked the 12:00 p.m. to 5:00 p.m. shift and could not attend the meetings and huddles because they typically occurred before the start of her shift. Nothing in the record indicates that James was excluded from attending meetings based upon her age.

Finally, James alleges age discrimination occurred because James did not receive a performance appraisal in 2011 or after 2015. (D.I. 37 at 22) The unrebutted record evidence establishes that James was over the age of fifty when hired by A.C. Moore in 2009, and that she received performance appraisals for 2009, 2010, 2012, 2013, and 2015, but none thereafter.

No reasonable jury could find for James on this claim for numerous reasons: First, James received performance appraisals when she was over the age of 50; second, there is no evidence that James was the only employee who did not receive performance appraisals; third, there is no evidence that James suffered any adverse employment actions because she did not receive performance appraisals; fourth, there

18

is no evidence of discriminatory intent. In short, other than the expression of her own alleged beliefs, there is no evidence in the record that James did not receive performance appraisals for a three-year time-frame based upon her age.

The record does not support a finding that A.C. Moore discriminated against James on the basis of age. Having reviewed all the age discrimination grounds raised by James, the Court finds that summary judgment is appropriate on behalf of A.C. Moore and against James.

## V. CONCLUSION

For the reasons discussed above, the Court will: (1) deny Plaintiff's motion for summary judgment (D.I. 100); and (2) grant A.C. Moore's motion for summary judgment (D.I. 105).

An Order will issue consistent with this Memorandum Opinion.